UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                              :

IN RE SEPTEMBER 11 PROPERTY DAMAGE  :
AND BUSINESS LOSS LITIGATION           :

                              :
------------------------------------------------------------X

21 MC 101 (AKH)

This document also relates to:

08 CIV 3719
08 CIV 3722

# MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION TO STRIKE INADMISSIBLE MATERIALS IN THE AVIATION DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON CPLR 4545(c)

FLEMMING ZULACK WILLIAMSON
ZAUDERER LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9500
Attorneys for Plaintiffs
World Trade Center Properties LLC,
1 World Trade Center LLC,
2 World Trade Center LLC,
3 World Trade Center LLC, and
4 World Trade Center LLC

Of Counsel:

    Richard A. Williamson, Esq.
    Gregg Kanter, Esq.

306712

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTS REGARDING INADMISSIBLE MATERIALS ........................................... 2

    Opinion Presentation......................................................................................... 2

    Appraisal ........................................................................................................... 4

    Offering Circular............................................................................................... 5

    Vornado Print-Out ............................................................................................ 6

    Brookfield Print-Out ......................................................................................... 6

    Boston Print-Out ............................................................................................... 7

    Mr. Barry's Remark........................................................................................... 8

    The *Hartford* Opinion ...................................................................................... 8

    The *SR* Opinion................................................................................................. 9

    FZWZ Payment Analysis................................................................................... 9

    Gokhale Declaration ......................................................................................... 11

ARGUMENT............................................................................................................... 13

I.     INADMISSIBLE EVIDENCE IS IMPROPER ON A
       MOTION FOR SUMMARY JUDGMENT, SHOULD NOT BE
       CONSIDERED, AND SHOULD BE STRICKEN FROM THE RECORD ........ 13

II.    INADMISSIBLE HEARSAY EXHIBITS SHOULD BE STRICKEN .............. 14

    A.    Third-Party Hearsay Documents Based on Hearsay Are Inadmissible .... 15

    B.    Purported Print-Outs from Third-Party Web Sites Are Inadmissible....... 16

    C.    Mr. Barry's Remark Is Inadmissible ........................................................ 17

    D.    The *SR* Opinion and the *Hartford* Opinion Are Inadmissible .................. 18

III.   THE FZWZ PAYMENT ANALYSIS IS INADMISSIBLE BECAUSE
       IT WAS PROVIDED TO THE AVIATION DEFENDANTS AS A
       COURTESY AND AID ON THE CONDITION THAT THEY
       COULD NOT USE IT AS EVIDENCE OR AS AN ADMISSION ................... 19

IV.   THE GOKHALE DECLARATION IS INADMISSIBLE BECAUSE
       THERE IS NO FOUNDATION FOR ITS FACTUAL ASSERTIONS
       WHICH ARE THE PREDICATE TO ALL ITS CALCULATIONS ................. 22

CONCLUSION............................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*In re Aetna Cas. & Sur. Co. v. Crown,*
   181 A.D.2d 883, 581 N.Y.S.2d 418 (2d Dep't 1992) ................................... 20

*Allen v. National Video, Inc.,*
   610 F. Supp. 612 (S.D.N.Y. 1985) ....................................................... 20

*B.F. Goodrich v. Betkoski,*
   99 F.3d 505 (2d Cir. 1996)................................................................ 13

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris,*
   141 F. Supp. 2d 320 (E.D.N.Y. 2001) ................................................. 18

*Boyd v. State Farm Ins. Cos.,*
   158 F.3d 326 (5th Cir. 1998) ............................................................. 22

*Chavez v. Metropolitan Dist. Comm'n,*
   198 Fed. Appx. 74 (2d Cir. 2006)....................................................... 14

*Daimon v. Fridman,*
   5 A.D.3d 426, 773 N.Y.S.2d 441 (2d Dep't 2004) ................................ 19

*Dedyo v. Baker Eng'g N.Y., Inc.,*
   96 Civ. 7152, 1998 WL 9376 (S.D.N.Y. Jan. 13, 1998)........................ 13, 14

*Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.,*
   06 Civ. 5474, 2008 WL 857492 (S.D.N.Y. Mar. 31, 2008) ..................... 13

*Electrolux Corp. v. Val-Worth, Inc.,*
   161 N.E.2d 197, 6 N.Y.2d 556, 190 N.Y.S.2d 977 (1959) ..................... 19, 21

*FTC v. Medical Billers Network, Inc.,*
   543 F. Supp. 2d 283 (S.D.N.Y. 2008).................................................. 16

*Garrett v. Tandy Corp.,*
   Civ. 00-384, 2003 WL 21250679 (D. Me. May 30, 2003),
   *adopted,* 2003 WL 21703637 (D. Me. July 22, 2003),
   *aff'd,* 86 Fed. Appx. 446 (1st Cir. 2004) ........................................... 16

*General Elec. Capital Corp. v. Eva Armadora, S.A.,*
   37 F.3d 41 (2d Cir. 1994) ................................................................ 21

*Glynn v. Bankers Life and Cas. Co.,*
   3:02CV1802, 2005 WL 2028698 (D. Conn. Aug. 23, 2005)...................... 14

*Gold Star Flooring Specialist, Inc. v. Manshul Constr. Corp.,*
   93 Civ. 4213, 1995 WL 231366 (S.D.N.Y. Apr. 19, 1995) ...................... 20

*In re Homestore.com, Inc. Sec. Litig.,*
   347 F. Supp. 2d 769 (C.D. Cal. 2004) ................................................. 17

*Ichan v. Todtman, Nachamie, Spizz & Johns, P.C.,*
   99 Civ. 11783, 2002 WL 362788 (S.D.N.Y. Mar. 6, 2002) ..................... 20

*Internet Specialites W., Inc. v. Ispwest,*
   CV 05-3296, 2006 WL 4568796 (C.D. Cal. Sept. 19, 2006)..................... 16

*John William Costello Assocs., Inc. v. Standard Metals Corp.,*
   99 A.D.2d 227, 472 N.Y.S.2d 325 (1st Dep't 1984) .............................. 19

*Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,*
   969 F.2d 1384 (2d Cir. 1992) ................................................................... 19

*In re Natural Gas Commodity Litig.,*
   03 Civ. 6186, 2005 WL 1457666 (S.D.N.Y. June 21, 2005) ..................... 21

*Nipper v. Snipes,*
   7 F.3d 415 (4th Cir. 1993) ....................................................................... 18

*Novak v. Tucows, Inc.,*
   06-CV-1909, 2007 WL 922306 (E.D.N.Y. Mar. 26, 2007) ...................... 17

*O'Neill v. JC Penney Life Ins. Co.,*
   CV-97-7467, 1998 WL 661513 (E.D.N.Y. Aug. 6, 1998) ......................... 22

*Parsons v. Honeywell, Inc.,*
   929 F.2d 901 (2d Cir. 1991) ..................................................................... 15

*Payroll Express Corp. v. Aetna Cas. & Sur. Co.,*
   659 F.2d 285 (2d Cir. 1981) ..................................................................... 21

*Pennsylvania Dental Ass'n v. Medical Serv. Ass'n of Pa.,*
   745 F.2d 248 (3d Cir. 1984) ..................................................................... 22

*Presidential Life Ins. Co. v. Milken,*
   946 F. Supp. 267 (S.D.N.Y. 1996) ........................................................... 21

*QVC Network, Inc. v. Christina Sportswear, Ltd.,*
   93 Civ. 6840, 1995 WL 437701 (S.D.N.Y. July 24, 1995) ...................... 20

*R.G. Group, Inc. v. Horn & Hardart Co.,*
   751 F.2d 69 (2d Cir. 1984) ....................................................................... 19

*Raskin v. Wyatt Co.,*
   125 F.3d 55 (2d. Cir. 1997) ...................................................................... 14

*Register.com, Inc. v. Verio, Inc.,*
   356 F.3d 393 (2d Cir. 2004) ..................................................................... 20

*Russell v. Raynes Assocs. Ltd. P'ship,*
   166 A.D.2d 6, 569 N.Y.S.2d 409 (1st Dep't 1991) ................................. 20

*Sabel v. Mead Johnson & Co.,*
   737 F. Supp. 135 (D. Mass. 1990) ........................................................... 15

*Santos v. Murdock,*
   243 F.3d 681 (2d Cir. 2001) ..................................................................... 13

*Sklar v. Clough,*
   1:06-Civ-0627, 2007 WL 2049698 (N.D. Ga. July 6, 2007) .................... 17

*Slaughter v. Southern Talc Co.,*
   919 F.2d 304 (5th Cir. 1990) .................................................................... 22

*Spector v. Experian Info. Serv. Inc.,*
   321 F. Supp. 2d 348 (D. Conn. 2004)....................................................... 13

*Tanenbaum Textile Co. v. Schlanger,*
   40 N.E.2d 225, 287 N.Y. 400 (1942) ....................................................... 19

*Textron, Inc. v. Teleoperator Sys. Corp.,*
   554 F. Supp. 315 (E.D.N.Y. 1983) ........................................................... 20

*U.S. v. Cruz,*
    894 F.2d 41 (2d Cir. 1990)................................................................... 15

*U.S. v. Jones,*
    29 F.3d 1549 (11th Cir. 1994) ........................................................... 18, 19

*U.S. v. Sine,*
    493 F.3d 1021 (9th Cir. 2007) ........................................................... 18

*U.S. Football League v. N.F.L.,*
    842 F.2d 1335 (2d Cir.1988)............................................................. 15

*Victaulic Co. v. Tieman,*
    499 F.3d 227 (3d Cir. 2007)............................................................. 17

*Whealen v. Hartford Life & Accident Ins. Co.,*
    CV06-4948, 2007 WL 1891175 (C.D. Cal. June 28, 2007) ....................... 17

*Yung Jin Teung v. Dulles,*
    229 F.2d 244 (2d Cir. 1956)............................................................. 14

### Rules & Statutes

Fed. R. Civ. P. 56(e) ............................................................................. 13, 16, 17

Fed. R. Evid. 801 ................................................................................. 14, 15, 17

Fed. R. Evid. 802 ................................................................................. 14, 17

Fed. R. Evid. 803 ................................................................................. 15

Fed. R. Evid. 804 ................................................................................. 15

Fed. R. Evid. 805 ................................................................................. 15

Fed. R. Evid. 807 ................................................................................. 15, 17

Fed. R. Evid. 1006 ............................................................................... 21

### Other Authorities

24 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, Jr.,
    FEDERAL PRACTICE & PROCEDURE § 5507(1986)....................................... 20

## PRELIMINARY STATEMENT

The Aviation Defendants' motion for summary judgment seeks to rely upon inadmissible evidence. Plaintiffs World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, and 4 World Trade Center LLC (collectively, "WTCP") cross-move to strike this inadmissible evidence pursuant to Rule 56(e) of the Federal Rules of Civil Procedure.

The purported evidentiary support for the Aviation Defendants' summary judgment motion is supplied by the Declaration of Desmond T. Barry, Jr., executed June 20, 2008 ("Barry Declaration") and the Declaration of Rajiv Gokhale ("Gokhale Declaration").[1] The exhibits to the Barry Declaration and the Gokhale Declaration itself are cited as the support for statements of purported fact in the Aviation Defendants' memorandum of law ("Moving Memorandum")[2] and Rule 56.1 statement ("Movants' Statement").[3]

The Gokhale Declaration is inadmissible because there is no factual basis shown for any of its calculations. As demonstrated below, the purported factual source for the Gokhale Declaration's calculations is a document that was given to the Aviation Defendants as a courtesy and on the condition that they could not use it as evidence. If that were not enough, the relied upon document does not even supply the facts upon which the Gokhale Declaration's calculations are based.

Sixteen exhibits attached to the Barry Declaration are inadmissible (the "Inadmissible Exhibits").[4] Six of the Inadmissible Exhibits appear to be the Gokhale

---

[1]    Declaration of Rajiv Gokhale in Support of Aviation Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment Dismissing All Claims for the Destruction of WTC 1, 2, 4, and 5, executed June 20, 2008.

[2]    Aviation Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment Dismissing All Claims for the Destruction of WTC 1, 2, 4, and 5.

[3]    Aviation Defendants' Statement Pursuant to Local Rule 56.1.

[4]    The Inadmissible Exhibits are exhibits A-1, A-2, A-3, B, B-1, B-2, B-3, C, E, F, G, Q, R, T, U & X to the Barry Declaration.

Declaration's calculations[5] and are inadmissible for the same reasons that the Gokhale Declaration is inadmissible. Nine of the Inadmissible Exhibits -- consisting of three third-party reports/opinions based on hearsay, three print-outs from third-party web sites, two judicial opinions, and a remark by Mr. Barry in a transcript -- are hearsay, do not fall within any exception to the hearsay rule, and thus are inadmissible. The last Inadmissible Exhibit is inadmissible because that document was provided to the Aviation Defendants solely as a courtesy and aid on the express condition that they not use that document as evidence.

Accordingly, the Inadmissible Exhibits and the Gokhale Declaration are inadmissible as evidence, should not be considered, and should be stricken from the record of the Aviation Defendants' summary judgment motion.

## FACTS REGARDING INADMISSIBLE MATERIALS

The Moving Memorandum and the Movants' Statement both cite to the Inadmissible Exhibits and the Gokhale Declaration as evidence of the truth of the statements recited therein. The Inadmissible Exhibits and the Gokhale Declaration are offered as evidentiary support for 15 of the 28 paragraphs of the Movants' Statement.[6]

We now describe the facts relevant to the inadmissibility of each of the Inadmissible Exhibits and the Gokhale Declaration.

**Opinion Presentation**

The Opinion Presentation (Barry Decl. Exh. B) is an unsworn collection of what appears to be a slide show from a Power Point presentation entitled "World Trade Center Net Lease Transaction Fairness Opinion Presentation." *See* Barry Decl. Exh. B, at first unnumbered

---

[5]    The Gokhale Declaration asserts that its mathematical calculations are described in Exhibits A and B, without any indication as to what document annexes Exhibits A and B. *See* Gokhale Decl. ¶¶ 6, 11. There are no exhibits annexed to the Gokhale Declaration. *See* Gokhale Decl. The Gokhale Declaration cannot be referring to Exhibits A and B of the Barry Declaration, because those are not calculations at all. *See* Barry Decl. Exhs. A, B. Presumably, the Gokhale Declaration's calculations are attached as Exhibits A-1, A-2, A-3, B-1, B-2, and B-3 to the Barry Declaration. The Barry Declaration's listing of its exhibits does not even reference exhibits A-1, A-2, A-3, B-1, B-2, and B-3. *See* Barry Decl. ¶ 3.

[6]    *See* Movants' Statement ¶¶ 2, 4, 6-10, 13, 16, 21-26.

page. Although the author of the Opinion Presentation is unknown, JP Morgan, Cushman &

Wakefield, and Milstein Brothers Realty Advisors are listed on the cover page, which suggests

that they are the Opinion Presentation's authors. *See id.*

No affidavit or declaration by the author(s) of the Opinion Presentation is

submitted by the Aviation Defendants, nor does the Barry Declaration state that Mr. Barry has

personal knowledge of the authorship or source of the Opinion Presentation or the circumstances

of its creation. Instead, the Barry Declaration simply attaches the Opinion Presentation without

comment, and the Aviation Defendants rely upon it in their summary judgment motion for the

truth of the matters asserted.

The Opinion Presentation warns that its statements are predicated on purported

statements made by other persons, unidentified information, and unspecified documents:

> The information in this presentation is based upon management forecasts
> and reflects prevailing conditions and our views as of this date . . . . In
> preparing this presentation, we have relied upon and assumed, *without
> independent verification*, the accuracy and completeness of all information
> available from public sources or which was provided to us by or on behalf
> of PA or which was otherwise reviewed by us.

Barry Decl. Exh. B, at second unnumbered page (emphasis added).

The Opinion Presentation also cautions that its statements may be inaccurate,

insofar as it states that it is "incomplete" and only "should be viewed solely in conjunction with

the oral briefing provided by JP Morgan, Cushman & Wakefield, and Milstein Brothers Realty

Advisors." *Id.*

The Moving Memorandum cites to the Opinion Presentation as "evidence" of the

truth of two assertions,[7] and the Movants' Statement cites to the Opinion Presentation as

---

[7]     *See* Moving Mem. at 5 ("Before making Final Bids, the four finalists each conducted a thorough
due diligence review of the World Trade Center's value. As J.P. Morgan, the Port Authority's consultant
reported, those comprehensive reviews involved 'four months of full-scale diligence, including financial
review of property operations; physical inspection of the property; and legal/business reviews of data
room materials.' J.P. Morgan further noted that '[e]ach team spent at least one million dollars during this
process.'") (citing Barry Decl. Exh. B, at 2); Moving Mem. at 6 ("JP Morgan delivered a fairness opinion,
concluding that, from a financial point of view, the consideration to be paid was fair to the Port
Authority.") (citing Barry Decl. Exh. B).

"evidence" of the truth of four assertions.[8] As shown in WTCP's Rule 56.1 counter-statement

("WTCP Counter-Statement"),[9] the Opinion Presentation does not provide factual support in any

event for three of the Movants' Statement's assertions that cite to the Opinion Presentation. *See*

WTCP Counter-Stmt. ¶¶ 2, 9, 10.

**Appraisal**

The Appraisal (Barry Decl. Exh. C) is an unsworn document entitled "Complete

Appraisal in a Self-Contained Appraisal Report" authored by Integra Krauser & Cirz. *See* Barry

Decl. Exh. C, at first unnumbered page.

No affidavit or declaration by the author of the Appraisal is submitted by the

Aviation Defendants, nor does the Barry Declaration state that Mr. Barry has personal

knowledge of the authorship or source of the Appraisal or the circumstances of its creation.

Instead, the Barry Declaration simply attaches the Appraisal without comment, and the Aviation

Defendants then rely upon it for the truth of the matters asserted.

The Appraisal cautions both that its statements are predicated on purported

statements made by other persons, and that its statements may not be accurate:

> Information, estimates and opinions contained in this report, obtained
> from sources outside of the office of the undersigned, are assumed to be
> reliable and *have not been independently verified*.

Barry Decl. Exh. C, at 4, ¶ 11 (emphasis added).

---

[8] *See* Movants' Stmt. ¶ 2 ("To Assist in this process, the Port Authority retained investment banking firm J.P. Morgan and property consulting firms Cushman & Wakefield and Milstein Realty Advisors.") (citing Barry Decl. Exh. B, at 2); Movants' Stmt. ¶ 9 ("Each of the finalists conducted a due diligence review of the property's value. According to J.P. Morgan, the reviews involved 'four months of full-scale diligence, including financial review of property operations; physical inspection of the property; and legal/business reviews of data room materials.' J.P. Morgan also reported that '[e]ach team spent at least one million dollars during this process.'") (citing Barry Decl. Exh. B, at 2); Movants' Stmt. ¶ 10 ("Vornado Realty Trust submitted the highest bid of $3.253 billion for WTC 1, 2, 4 and 5 and the Retail Mall.") (citing Barry Decl. Exh. B, at 18); Movants' Stmt. ¶ 13 ("On April 27, 2001, the Port Authority's consultant, J.P. Morgan, delivered a fairness opinion concluding that the consideration to be paid by WTCP for the World Trade Center was fair, from a financial point of view, to the Port Authority.") (citing Barry Decl. Exh. B).

[9] WTCP Plaintiffs' Counter-Statement of Material Facts in Dispute in Opposition to the Aviation Defendants' Motion for Summary Judgment Based on CPRL 4545(c).

The Movants' Statement cites to the Appraisal as "evidence" of the truth of one assertion.[10]  The Appraisal, however, does not provide factual support for the Movants' Statement's assertion citing to the Appraisal. *See* WTCP Counter-Stmt. ¶ 4.

**Offering Circular**

The Offering Circular (Barry Decl. Exh. Q) is an unsworn document entitled "Confidential Offering Circular Dated August 8, 2001." *See* Barry Decl. Exh. Q, at 1.  The author of the Offering Circular is unknown.

No affidavit or declaration by the author of the Offering Circular is submitted by the Aviation Defendants, nor does the Barry Declaration state that Mr. Barry has personal knowledge of the authorship or source of the Offering Circular or the circumstances of its creation.  Instead, the Barry Declaration simply attaches the Offering Circular without comment, and the Aviation Defendants then rely upon it for the truth of the matters asserted.

The Offering Circular warns that its statements are predicated on purported statements made by other persons:

> The information contained in this Offering Circular has been provided by the Depositor and other sources identified herein.

Barry Decl. Exh. Q, at iii.

Further, the Offering Circular cautions that its statements may not be accurate or complete:

> No representation or warranty, express or implied, is made by the Initial Purchasers as to the accuracy or completeness of such information.

Barry Decl. Exh. Q, at iii.

The Movants' Statement cites to the Offering Circular as "evidence" of the truth of one assertion.[11]

---

[10]    *See* Movants' Stmt. ¶ 4 ("The Port Authority broadcast a worldwide request for interest in bidding on the World Trade Center.  During the summer of 2000, more than 100 requests for qualified bidders were sent to potential investors both domestically and internationally.") (citing Barry Decl. Exh. C, at 7).

[11]    *See* Movants' Stmt. ¶ 16 ("WTCP and Westfield LLC made a one-time, up-front cash payment of $616 million, with $491 million paid by WTCP and $125 million paid by Westfield LLC.") (citing Barry Decl. Exh. Q, at 92).

**Vornado Print-Out**

The Vornado Print-Out (Barry Decl. Exh. E) is purported to be a print-out from the 2008 web site of Vornado Realty Trust ("Vornado"). The preparer of the Vornado Print-Out is unknown.

No affidavit or declaration by the preparer of the Vornado Print-Out is submitted by the Aviation Defendants, nor does the Barry Declaration state that Mr. Barry has personal knowledge of the source of the Vornado Print-Out or the circumstances of its creation. Instead, the Barry Declaration simply attaches the Vornado Print-Out without comment, and the Aviation Defendants then rely upon it for the truth of the matters asserted.

The Moving Memorandum cites to the Vornado Print-Out as "evidence" of the truth of one assertion,[12] and the Movants' Statement cites to the Vornado Print-Out as "evidence" of the truth of one assertion.[13]

**Brookfield Print-Out**

The Brookfield Print-Out (Barry Decl. Exh. F) is purported to be a print-out from the 2008 web site of Brookfield Properties ("Brookfield"). The preparer of the Brookfield Print-Out is also unknown.

No affidavit or declaration by the preparer of the Brookfield Print-Out is submitted by the Aviation Defendants, nor does the Barry Declaration state that Mr. Barry has personal knowledge of the source of the Brookfield Print-Out or the circumstances of its creation. Instead, the Barry Declaration simply attaches the Brookfield Print-Out without comment, and the Aviation Defendants then rely upon it for the truth of the matters asserted.

---

[12]    *See* Moving Mem. at 5 n.4 ("According to its Web site, 'Vornado is one of the largest owners and managers of real estate in the United States with a portfolio of over 100 million square feet in its major platforms, primarily located in the New York and Washington, DC Metro areas. The company's four major platforms include: New York City Office; Washington, DC Office; Retail Properties and Merchandise Mart.'") (citing Barry Decl. Exh. E).

[13]    *See* Movants' Stmt. ¶ 6 ("According to its Web site, 'Vornado is one of the largest owners and managers of real estate in the United States with a portfolio of over 100 million square feet in its major platforms, primarily located in the New York and Washington, DC Metro areas. The company's four major platforms include: New York City Office; Washington, DC Office; Retail Properties and Merchandise Mart.'") (citing Barry Decl. Exh. E).

The Moving Memorandum cites to the Brookfield Print-Out as "evidence" of the truth of one assertion,[14] and the Movants' Statement cites to the Brookfield Print-Out as "evidence" of the truth of one assertion.[15]

**Boston Print-Out**

The Boston Print-Out (Barry Decl. Exh. G) is purported to be a print-out from the 2008 web site of Boston Properties ("Boston"). The preparer of the Boston Print-Out is unknown.

No affidavit or declaration by the preparer of the Boston Print-Out is submitted by the Aviation Defendants, nor does the Barry Declaration state that Mr. Barry has personal knowledge of the source of the Boston Print-Out or the circumstances of its creation. Instead, the Barry Declaration simply attaches the Boston Print-Out without comment, and the Aviation Defendants then rely upon it for the truth of the matters asserted.

The Moving Memorandum cites to the Boston Print-Out as "evidence" of the truth of one assertion,[16] and the Movants' Statement cites to the Boston Print-Out as "evidence" of the truth of one assertion.[17]

---

[14]    *See* Moving Mem. at 5 n.5 ("According to its Web site, 'Brookfield is a commercial real estate corporation that owns, develops, and operates premier assets in the downtown cores of high-growth North American cities. Our signature properties define the skylines of many major metropolises including New York, Boston, Washington, DC, Los Angeles, Houston, Toronto and Calgary. Brookfield Properties is a publicly traded company, and is listed under the ticker symbol BPO on both the New York and Toronto Stock Exchanges.'") (citing Barry Decl. Exh. F).

[15]    *See* Movants' Stmt. ¶ 7 ("According to its Web site, 'Brookfield is a commercial real estate corporation that owns, develops, and operates premier assets in the downtown cores of high-growth North American cities. Our signature properties define the skylines of many major metropolises including New York, Boston, Washington, DC, Los Angeles, Houston, Toronto and Calgary. Brookfield Properties is a publicly traded company, and is listed under the ticker symbol BPO on both the New York and Toronto Stock Exchanges.'") (citing Barry Decl. Exh. F).

[16]    *See* Moving Mem. at 5 n.6 ("Boston Properties, a self-administered and self-managed real estate investment trust, is one of the largest owners, managers, and developers of first-class office properties in the United States, with a significant presence in four core markets: Boston, Washington, D.C., Midtown Manhattan and San Francisco.") (citing Barry Decl. Exh. G).

[17]    *See* Movants' Stmt. ¶ 8 ("According to its website, 'Boston Properties, a self-administered and self-managed real estate investment trust, is one of the largest owners, managers, and developers of first-class office properties in the United States, with a significant presence in four core markets: Boston, Washington, D.C., Midtown Manhattan and San Francisco.'") (citing Barry Decl. Exh. G).

**Mr. Barry's Remark**

Mr. Barry's Remark (Barry Decl. Exh. U) is an unsworn and inaccurate statement by Mr. Barry concerning the amount of WTCP's claim that is reflected in the transcript of the March 18, 2008 status conference in this action. *See* Barry Decl. Exh. U, at 43:7.

The Barry Declaration does not provide that Mr. Barry has personal knowledge as to what he mistakenly said about the amount of WTCP's claim.

The Movants' Statement cites in one assertion to Mr. Barry's Remark as "evidence" of the truth of the matter covered by Mr. Barry's Remark.[18]

**The *Hartford* Opinion**

The *Hartford* Opinion (Barry Decl. Exh. R) is a judicial opinion in the case entitled *World Trade Ctr. Props. LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154 (2d Cir. 2003). The *Hartford* Opinion involved determinations of facts and issues which were specific to WTCP's insurance coverage dispute with its insurance carriers. The facts and issues litigated in that case were entirely different from the instant case, and have no bearing on WTCP's claims against the Aviation Defendants.

The Moving Memorandum cites to the *Hartford* Opinion as "evidence" of the truth of one assertion,[19] and the Movants' Statement cites to the *Hartford* Opinion as "evidence" of the truth of one assertion.[20] As shown in WTCP's Rule 56.1 counter-statement, the *Hartford* Opinion does not provide factual support for the Movants' Statement's assertion citing to the *Hartford* Opinion. *See* WTCP Counter-Stmt. ¶ 21.

---

[18]    *See* Movants' Stmt. ¶ 26 ("WTCP's claim for total damages for WTC 1, 2, 4, and 5 is approximately $12.3 billion plus prejudgment interest.") (citing Barry Decl. Exh. U, at 43).

[19]    *See* Moving Mem. at 8 ("WTCP fulfilled [its] obligation by obtaining even more insurance than the $1.5 billion per occurrence required by the net leases and previously maintained by the Port Authority.") (citing Barry Decl. Exh. R, at 158).

[20]    *See* Movants' Stmt. ¶ 21 ("WTCP fulfilled [its] obligation by obtaining even more insurance than the $1.5 billion per occurrence required by the net leases and previously maintained by the Port Authority.") (citing Barry Decl. Exh. R, at 158).

**The *SR* Opinion**

The *SR* Opinion (Barry Decl. Exh. X ) is a judicial opinion in the case entitled *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*, 467 F.3d 107 (2d Cir. 2006). The *SR* Opinion involved determinations of facts and issues specific to WTCP's insurance coverage dispute with its insurance carriers. The facts and issues litigated in that case were entirely different from the instant case, and have no bearing on WTCP's claims against the Aviation Defendants.

The Moving Memorandum cites to the *SR* Opinion as "evidence" of the truth of one assertion,[21] and the Movants' Statement cites to the *SR* Opinion as "evidence" of the truth of one assertion.[22] The *SR* Opinion, however, does not provide factual support for the Movants' Statement's assertion citing to the *SR* Opinion. *See* WTCP Counter-Stmt. ¶ 22.

**FZWZ Payment Analysis**

The FZWZ Payment Analysis (Barry Decl. Exh. T) is an unsworn chart entitled "WTCP Main Site Plaintiffs Property Insurance Payments Received and to be Received, by Insurance Carrier." *See* Barry Decl. Exh. T, at 1. The FZWZ Payment Analysis is a chart prepared by Flemming Zulack Williamson Zauderer LLP ("FZWZ") representing FZWZ's best efforts to summarize the insurance payments received, and to be received (if certain conditions are met), by WTCP as derived by FZWZ from the same source documents that were provided to the Aviation Defendants. *See* Cohen Decl. ¶¶ 3, 5.[23] The FZWZ Payment Analysis does not identify the dates that insurance payments were received or are to be received by WTCP. *See* Barry Decl. Exh. T.

---

[21]    *See* Moving Mem. at 8 ("After the buildings were destroyed, WTCP and its insurers disputed whether the attacks constituted one or two 'occurrences' under the terms of the insurance policies. A series of jury verdicts and appeals on this issue resulted in rulings that WTCP was insured for $4.6 billion.") (citing Barry Decl. Exh. X, at 114-18, 140).

[22]    *See* Movants' Stmt. ¶ 22 ("After September 11, 2001 WTCP and its insurers disputed whether the terrorist attack was one or two occurrences. A series of jury verdicts and appeals on this issue resulted in rulings that WTCP was insured for $4.6 billion.") (citing Barry Decl. Exh. X, at 114-18, 140).

[23]    Declaration in Support of Cross-Motion To Strike Inadmissible Materials in the Aviation Defendants' Motion for Summary Judgment Based on CPLR 4545(c), executed August 18, 2008 by Jason T. Cohen ("Cohen Decl.").

Mr. Barry mistakenly claims that the author of the FZWZ Payment Analysis is Wachtell, Lipton, Rosen & Katz ("Wachtell Lipton"). *See* Barry Decl. ¶ 3. In fact, FZWZ created the FZWZ Payment Analysis. *See* Cohen Decl. ¶ 3.

FZWZ provided the FZWZ Payment Analysis to the Aviation Defendants solely as a courtesy and an aid and subject to the express condition that the Aviation Defendants could not use the FZWZ Payment Analysis as evidence or as an admission. *See* Cohen Decl. ¶¶ 3, 5-9. The letter transmitting the FZWZ Payment Analysis to the Aviation Defendants expressly states that the FZWZ Payment Analysis is not an admission and cannot be used as evidence:

> [N]othing stated herein is intended as, or may be deemed to constitute, an admission as to any issue of fact or law. In addition, neither this document, nor the charts and summaries created by counsel produced under cover of this letter, constitute admissible evidence at trial. They are being provided as a courtesy and may not be used in any way to prove or disprove any issue of fact or law in the pending lawsuits, including any motion regarding the measure of damages.

Cohen Decl. ¶ 8. Moreover, the FZWZ Payment Analysis itself advises it is not an admission or admissible as evidence:

> Without Prejudice; Not Admissible as Evidence[2]
>
> [2] Nothing stated herein is intended, or may be deemed to constitute, an admission as to any issue of fact or law. This document may not be used in any way to prove or disprove any issue of fact or law in the pending lawsuits or at trial and does not constitute admissible evidence.

Barry Decl. Exh. T.

The Aviation Defendants accepted the FZWZ Payment Analysis with the foregoing restrictions and conditions in the transmittal letter and on the face of the FZWZ Payment Analysis itself. *See* Cohen Decl. ¶ 10. The Aviation Defendants never challenged the restrictions and conditions on their inability to use the FZWZ Payment Analysis as an admission or as evidence. *See* Cohen Decl. ¶ 10. Furthermore, the Aviation Defendants' agreement not to use the FZWZ Payment Analysis as an admission or as evidence is confirmed by their own conduct when they asked WTCP to stipulate to certain matters in the FZWZ Payment Analysis. *See* Cohen Decl. ¶ 11.

The Moving Memorandum cites to the FZWZ Payment Analysis as "evidence" of the truth of one assertion,[24] and the Movants' Statement cites to the FZWZ Payment Analysis as "evidence" of the truth of one assertion.[25] The FZWZ Payment Analysis, however, does not provide factual support for the Movants' Statement's assertion citing to the FZWZ Payment Analysis. *See* WTCP Counter-Stmt. ¶ 23.

**Gokhale Declaration**

The Gokhale Declaration purports to set forth the results of two sets of calculations: (1) the net present value, using various discount rates, of the insurance payments received on particular dates by WTCP; and (2) the interest accruing, at various interest rates, on the amount the Aviation Defendants claim is the total of all of WTCP's damages, up to the particular dates that insurance payments were received by WTCP. One input used in all of the Gokhale Declaration's calculations is the date and amount of each insurance payment received by WTCP. Without the precise dates, the Gokhale Declaration could not have done any of its calculations. The Gokhale Declaration appears to say that the purported source for this input information is the FZWZ Payment Analysis (Barry Decl. Exh. T):

> I understand the schedule of insurance payments I have used in my calculations was prepared by the law firm of Wachtell, Lipton, Rosen & Katz [sic].

Gokhale Decl. ¶ 2.[26]

---

[24]    *See* Moving Mem. at 8-9 ("According to Wachtell's chart, WTCP has received, or will receive, payments totaling no less than $4,091,364,039 of the $4,581,794,675 in insurance payments made by its insurers.") (citing Barry Decl. Exh. T).

[25]    *See* Movants' Stmt. ¶ 23 ("WTCP has received, or based upon existing agreements with its insurers, will receive, a total of no less than $4,091,364,039 of the $4,581,794,675 in insurance payments made and to be made by their insurers. A portion of the insurance payments was allocated to the retail portion of the complex based on a formula. No more than $490,430,635 was allocated to the retail portion of the Complex.") (citing Barry Decl. Exh. T).

[26]    We draw this inference because the Gokhale Declaration does not attach any "schedule of insurance payments," and the Barry Declaration mistakenly describes the FZWZ Payment Analysis as a "Chart by Wachtell, Lipton, Rosen & Katz 'WTCP Main Site Plaintiffs -- Property Insurance Payments Received and to be Received, by Insurance Carrier.'" Barry Decl. ¶ 3(T). The only insurance payment analysis attached to the Aviation Defendants' moving papers is the FZWZ Payment Analysis.

The FZWZ Payment Analysis, however, does not provide any of the dates on which insurance payments were received by WTCP. Accordingly, the FZWZ Payment Analysis could not have supplied the input information that forms the basis for all of the Gokhale Declaration's calculations, which are predicated on the precise dates that insurance payments were made to WTCP.

Indeed, there is nothing in the Aviation Defendants' motion papers that purports to show the dates that insurance payments were received, or are projected to be received, by WTCP, excepting, of course, the Gokhale Declaration's unsupported say so. *See* Barry Decl. Exhs. A-1, A-2, A-3, B-1, B-2, B-3.[27]

The Moving Memorandum cites to the Gokhale Declaration as "evidence" of the truth of two assertions, and the Movants' Statement cites to the Gokhale Declaration as "evidence" of the truth of six assertions. *See* Moving Mem. at 32 n.15, 34; Movants' Stmt. ¶¶ 24-25. As shown in WTCP's Counter-Statement, even if the Gokhale Declaration were admissible as evidence, it still would not support three assertions in the Movants' Statement that cite to the Gokhale Declaration. *See* WTCP Counter-Stmt. ¶ 24.

---

[27]     Given the Barry's Declaration's mistaken statement that Wachtell Lipton prepared the FZWZ Payment Analysis, we speculate that the source of the dates of insurance payments for the Gokhale Declaration's calculations is not the FZWZ Payment Analysis, but rather another FZWZ-prepared analysis that supplies the results of FZWZ's best efforts at ascertaining the date and amount of each insurance payment received by WTCP. *See* Cohen Decl. ¶ 7. The Aviation Defendants, however, are not permitted to use this other FZWZ-prepared analysis as evidence either because, just like the FZWZ Payment Analysis, it was provided to them as a courtesy and subject to the express condition that they could not use it as evidence or as an admission. *See* Cohen Decl. ¶ 7.

## ARGUMENT

The Aviation Defendants attempt to meet their burden on summary judgment by having this Court impermissibly consider documents that are inadmissible as evidence. As demonstrated below, the Inadmissible Exhibits and the Gokhale Declaration itself are inadmissible as evidence, should not be considered on the Aviation Defendants' motion for summary judgment, and should be stricken from the record.

### I.

### INADMISSIBLE EVIDENCE IS IMPROPER ON A MOTION FOR SUMMARY JUDGMENT, SHOULD NOT BE CONSIDERED, AND SHOULD BE STRICKEN FROM THE RECORD

Only admissible evidence may be considered on a motion for summary judgment. *See Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial."); *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 525 (2d Cir. 1996) ("When deciding a motion for summary judgment, only admissible evidence may be considered."); *Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 06 Civ. 5474, 2008 WL 857492, at *8 (S.D.N.Y. Mar. 31, 2008) ("inadmissible hearsay [] cannot be considered on this motion for summary judgment"); *cf.* Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.").

"A motion to strike is appropriate if affidavits contain inadmissible hearsay or are not made on the basis of personal knowledge." *Dedyo v. Baker Eng'g N.Y., Inc.*, 96 Civ. 7152, 1998 WL 9376, at *4 (S.D.N.Y. Jan. 13, 1998); *see also Spector v. Experian Info. Serv. Inc.*, 321 F. Supp. 2d 348, 352 (D. Conn. 2004) ("A motion to strike is appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay or conclusory statements, are incomplete, or have not been properly authenticated.").

"In ruling on a motion to strike, the court applies the Federal Rules of Evidence to determine whether evidence would be admissible at trial and thus whether the court can consider them in ruling on a motion for summary judgment." *Glynn v. Bankers Life & Cas. Co.*, No. 3:02CV1802, 2005 WL 2028698, at *1 (D. Conn. Aug. 23, 2005); *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997) ("The principles governing admissibility of evidence do not change on a motion for summary judgment.").

A motion to strike "will also be granted when it challenges documentary evidence that was submitted in support of or in opposition to a summary judgment motion, but which has not been properly authenticated.  It is irrelevant that the documents may in the future be properly authenticated at trial through a witness." *Dedyo v. Baker Eng'g N.Y., Inc.*, 1998 WL 9376, at *4 (citing JAMES WM. MOORE, ET AL., 11 MOORE'S FEDERAL PRACTICE ¶ 56.14[4][a] (3d ed. 1997)).

As shown below, the Inadmissible Exhibits and the Gokhale Declaration itself are inadmissible as evidence, should not be considered, and must be stricken from the record of the Aviation Defendants' summary judgment motion.

## II.

## INADMISSIBLE HEARSAY EXHIBITS SHOULD BE STRICKEN

The Inadmissible Exhibits were all prepared by third parties who have not testified or sworn to the truthfulness of the statements in the Inadmissible Exhibits.  The Inadmissible Exhibits are being offered for the truth of the matters asserted therein. Accordingly, the Inadmissible Exhibits are all hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Hearsay is not admissible as evidence unless one of the exceptions to the hearsay rule applies. *See* Fed. R. Evid. 802; *Chavez v. Metropolitan Dist. Comm'n,* 198 Fed. Appx. 74, 75 (2d Cir. 2006) (report prepared by law firm was inadmissible hearsay); *Yung Jin Teung v. Dulles*, 229 F.2d 244, 246 (2d Cir. 1956) (government "Status Reports" were unauthenticated hearsay documents, were not admissible as evidence, and "the District Court should not have

considered them on the motion for summary judgment"); *Sabel v. Mead Johnson & Co.*, 737 F. Supp. 135, 138 (D. Mass. 1990) (outside consultants' recorded statements are inadmissible hearsay if offered for the truth of the statements).

The Aviation Defendants do not even attempt to lay a foundation for admitting the Inadmissible Exhibits into evidence under any of the hearsay exceptions. In any event, as demonstrated below, none of the Inadmissible Exhibits could qualify for a hearsay exception, and none has an independent, circumstantial guaranty of trustworthiness to qualify for the residual exception to the hearsay rule, Fed. R. Evid. 807, which applies "very rarely, and only in exceptional circumstances." *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991).

**A.    Third-Party Hearsay Documents Based on Hearsay Are Inadmissible**

The Opinion Presentation, the Appraisal, and the Offering Circular are all unauthenticated, un-sworn documents prepared by third-parties. No foundation has been laid for these documents. As shown above, they are all cited as evidence for the truth of the matters asserted therein. Each of these three exhibits is hearsay. *See* Fed. R. Evid. 801(c).

Furthermore, the Opinion Presentation, the Appraisal, and the Offering Circular are all hearsay within hearsay because each concedes that its statements are predicated on the purported statements made by others. A hearsay document that itself includes hearsay is inadmissible as evidence unless every layer of hearsay qualifies for an exception to the hearsay rule. *See* Fed. R. Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."); *U.S. v. Cruz,* 894 F.2d 41, 44 (2d Cir. 1990) ("Each hearsay statement within multiple hearsay statements must have a hearsay exception in order to be admissible."); *U.S. Football League v. N.F.L.*, 842 F.2d 1335, 1376 (2d Cir.1988) (finding no basis to admit double hearsay into evidence where "first, no foundation was laid to introduce handwritten notes" allegedly reflecting third party's comments and, "[s]econd, these notes were, as Judge Leisure found, being offered for their truth, not simply for the fact that the statements were made, and were properly excluded as multiple hearsay under Fed. R. Evid. 805").

Finally, the Opinion Presentation, the Appraisal, and the Offering Circular each warn that their statements may not be accurate and, therefore, they all lack circumstantial guarantees of trustworthiness to qualify for the residual exception to the hearsay rule. *Cf.* Fed. R. Evid. 807.

The Aviation Defendants offer no basis or reason for the Opinion Presentation, the Appraisal, or the Offering Circular to qualify for any other recognized exception to the hearsay rule. *Cf.* Fed. R. Evid. 803, 804.

Accordingly, the Opinion Presentation, the Appraisal, and the Offering Circular are inadmissible as evidence, should not be considered, and should be stricken from the record of the Aviation Defendants' summary judgment motion. *See* Fed. R. Civ. P. 56(e).

## B.    Purported Print-Outs from Third-Party Web Sites Are Inadmissible

The Vornado Print-Out, the Brookfield Print-Out, and the Boston Print-Out are all purported print-outs from the web sites of third-parties from the irrelevant time frame of 2008. The Aviation Defendants neglect to offer a foundation for any of these purported web site print-outs, yet the Aviation Defendants cite to these purported web site print-outs as evidence of the truth of their statements.

A purported print-out from the web site of a third-party is hearsay. *FTC v. Medical Billers Network, Inc.,* 543 F. Supp. 2d 283, 302 (S.D.N.Y. 2008) ("[A] printout of a website showing graphs of salary data for medical billers in the United States as of May 2007 . . . is inadmissible hearsay to show that medical billers in fact earned those salaries."); *Novak v. Tucows, Inc.,* 06-CV-1909, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007 ) ("Where postings from internet websites are not statements made by declarants testifying at trial and are offered to prove the truth of the matter asserted, such postings generally constitute hearsay under Fed. R. Evid. 801."); *Internet Specialties W., Inc. v. Ispwest,* CV 05-3296, 2006 WL 4568796, at *1 (C.D. Cal. Sept. 19, 2006) ("Printouts of websites . . . are hearsay."); *Garrett v. Tandy Corp.,* Civ. 00-384, 2003 WL 21250679, at *3 (D. Me. May 30, 2003) ("The web-page printouts to which [plaintiffs] refer constitute inadmissible hearsay inasmuch as they are offered for the truth

16

of the matter contained therein and fit no discernable hearsay exception."), *adopted*, 2003 WL

21703637 (D. Me. July 22, 2003), *aff'd*, 86 Fed. Appx. 446 (1st Cir. 2004).

A purported print-out from a web site of a third-party lacks circumstantial

guarantees of trustworthiness to qualify for the residual exception to the hearsay rule:

> [A] company's website is a marketing tool. Often, marketing material is
> full of imprecise puffery that no one should take at face value. . . .
> [P]rivate corporate websites, particularly when describing their own
> business, generally are not the sorts of 'sources whose accuracy cannot
> reasonably be questioned.'

*Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) (quoting Fed. R. Evid. 201(b)); *cf.*

Fed. R. Evid. 807.[28]

Accordingly, the Vornado Print-Out, the Boston Print-Out, and the Brookfield

Print-Out are inadmissible as evidence, should not be considered, and should be stricken from

the record of the Aviation Defendants' summary judgment motion. *See* Fed. R. Civ. P. 56(e).

**C.    Mr. Barry's Remark Is Inadmissible**

The Aviation Defendants cite to an unsworn statement made by their own lawyer

as evidence of the truth of his assertion that the amount of WTCP's damages claim is

approximately $12.3 billion plus prejudgment interest.

---

[28]    The web site print-outs are also inadmissible for lack of authentication. The Aviation Defendants
have offered no foundation or authentication as to the origins of the print-outs, and the court can strike
these exhibits on that basis alone. *See Novak v. Tucows, Inc.*, 06-CV-1909, 2007 WL 922306, at *5 ("[I]n
the absence of any authentication of plaintiff's internet printouts, . . . defendants' motion to strike . . . is
granted."); *Victaulic Co. v. Tieman,* 499 F.3d at 236 ("Anyone may purchase an internet address, and so,
without proceeding to discovery or some other means of authentication, it is premature to assume that a
webpage is owned by a company merely because its trade name appears in the uniform resource
locator."); *Sklar v. Clough*, 1:06-CV-0627, 2007 WL 2049698, at *6 (N.D. Ga. July 6, 2007) (granting
motion to strike because "courts are hesitant to accept mere printouts from web sites with no foundation
or authentication as to its origins"); *Whealen v. Hartford Life & Accident Ins. Co.*, CV06-4948, 2007 WL
1891175, at *11 (C.D. Cal. June 28, 2007) (Although the computer print-outs bear the URL address and
date stamp, the Court may not consider this evidence without proper authentication); *Internet Specialties
W., Inc. v. Ispwest*, CV 05-3296, 2006 WL 4568796, at *1 ("[P]rint-outs are inadmissible unless properly
authenticated. Defendant's argument, that they could be 'authenticated' by the person who went to the
website and printed out the home page, is unavailing."); *In re Homestore.com, Inc. Sec. Litig.*, 347 F.
Supp. 2d 769, 782 (C.D. Cal. 2004) ("Printouts from a web site do not bear the indicia of reliability
demanded for other self-authenticating documents under Fed. R. Evid. 902. To be authenticated, some
statement or affidavit from someone with knowledge is required.").

As Mr. Barry has no first-hand knowledge of the amount of WTCP's damages claim, Mr. Barry's Remark is hearsay and, therefore, is inadmissible as evidence. *See* Fed. R. Evid. 801(c), 802.

Accordingly, Mr. Barry's Remark should be stricken from the record of the Aviation Defendants' summary judgment motion. *See* Fed. R. Civ. P. 56(e).

The reason this relief is requested is that WTCP's updated DDF[29] (Barry Decl. Exh. V) explicitly states that *as of April, 2007*, WTCP's *preliminary estimate* of damages is approximately $12.3 billion. When expert discovery begins in 2009 pursuant to the Court's directive, WTCP will provide a comprehensive updated calculation of its damages that will supersede its preliminary estimate from over a year ago.

**D.    The *SR* Opinion and the *Hartford* Opinion Are Inadmissible**

Statements of fact in judicial opinions are hearsay. *See U.S. v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994) ("We note at the outset that Judge Alaimo's order [in a different district court action], in the context of this case, is hearsay evidence, under Fed. R. Evid. 801(c)."); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993) ("Judge McGowan's order, as used in the context of this case, is hearsay evidence, under Fed. R. Evid. 801(c).").

There are no exceptions to the hearsay rule under the Federal Rules of Evidence that permit the admissibility of judicial opinions offered as evidence of the statements of fact in such opinions. As Judge Weinstein observed:

> Judicial findings in other cases proffered as evidence are generally characterized as inadmissible hearsay. No specific exceptions apply under the Federal Rules of Evidence.

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) (Weinstein, J.) (citations omitted); *see also U.S. v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) ("We therefore agree with the Fourth, Tenth, and Eleventh Circuits that judicial findings of fact are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists. . . . [W]e hold that none is available.").

---

[29]    WTCP Cross-Claim Plaintiffs' Updated Damages Disclosure: 1, 2, 4, and 5 World Trade Center.

On a motion for summary judgment, a judicial opinion is not admissible as evidence of the statements of fact made therein. *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388 (2d Cir. 1992) (holding that on motion for summary judgment, bankruptcy court orders were not admissible as evidence of facts stated in such orders); *U.S. v. Jones*, 29 F.3d at 1554 ("The district court erred in granting the Government's motion for summary judgment because the findings of fact and references to testimony within Judge Alaimo's order [in a different district court action] upon which it relied were inadmissible evidence and therefore, should not have been considered.").

Accordingly, the *SR* Opinion and the *Hartford* Opinion are inadmissible hearsay, should not be considered, and should be stricken from the record of the Aviation Defendants' summary judgment motion.

## III.

### THE FZWZ PAYMENT ANALYSIS IS INADMISSIBLE BECAUSE IT WAS PROVIDED TO THE AVIATION DEFENDANTS AS A COURTESY AND AID ON THE CONDITION THAT THEY COULD NOT USE IT AS EVIDENCE OR AS AN ADMISSION

The FZWZ Payment Analysis was prepared by FZWZ and provided to the Aviation Defendants as a courtesy and aid, subject to the express condition that it could not be used as evidence or as an admission. The Aviation Defendants accepted the FZWZ Payment Analysis,[30] and never challenged the restrictions set forth on the face of the FZWZ Payment

---

[30]     Basic principles of contract law provide that acceptance of a benefit subject to express conditions constitutes a binding contractual agreement to abide by such express conditions. *See R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 75-76 (2d Cir. 1984) ("[P]artial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect."); *Electrolux Corp. v. Val-Worth, Inc.,* 161 N.E.2d 197, 201, 6 N.Y.2d 556, 564, 190 N.Y.S.2d 977, 983 (1959) (In determining whether a party has ratified a contract through its acquiescence, the court will look at whether the allegedly acquiescent party has enjoyed any benefits as the result of the proponent's continued performance.); *Daimon v. Fridman*, 5 A.D.3d 426, 428, 773 N.Y.S.2d 441, 442 (2d Dep't 2004) ("The defendant's conduct in accepting [an additional] payment and in depositing [a] down payment check constituted an acceptance of the plaintiff's counteroffer."); *John William Costello Assocs., Inc. v. Standard Metals Corp.,* 99 A.D.2d 227, 231, 472 N.Y.S.2d 325, 328 (1st Dep't 1984) (defendant accepted plaintiff's written offer when it "accepted the benefits of the plaintiff's services").

Analysis and in the transmittal letter.[31]  Finally, the Aviation Defendants evidenced their

knowledge that they could not use the FZWZ Payment Analysis as evidence or as an admission

by their own conduct, when they asked WTCP to stipulate to the certain matters in the FZWZ

Payment Analysis, which they would not have done had they not already known that the FZWZ

Payment Analysis could not be used as evidence or as an admission.[32]  Notwithstanding the

foregoing, the Aviation Defendants now seek to violate the express prohibition on which their

receipt of the FZWZ Payment Analysis was conditioned.

      It is axiomatic that parties are free to reach agreements about the admissibility --

or inadmissibility -- of evidence.  *See* 24 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR.,

FEDERAL PRACTICE & PROCEDURE § 5507, at 579 (1986); *Ichan v. Todtman, Nachamie, Spizz &*

*Johns, P.C.*, 99 Civ. 11783, 2002 WL 362788, at *1, 4 (S.D.N.Y. Mar. 6, 2002) (Francis, Mag.

---

[31]    Given that the Aviation Defendants did not challenge the restrictions and conditions set forth in the FZWZ Payment Analysis and the transmittal letter prohibiting the use of the FZWZ Payment Analysis as evidence or as an admission, the Aviation Defendants may not now ignore those conditions and restrictions by attempting to use the FZWZ Payment Analysis on this matter.  *See Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 403-04 (2d Cir. 2004) (upholding trial court's issuance of a preliminary injunction where defendant, knowing the terms under which it acquired information from plaintiff, a registrar of Internet domain names, nevertheless used the information in violation of those terms; silence and inaction may operate as an acceptance where an offeree accepts services and, "at the time of acceptance the offeree has a reasonable opportunity to reject the service and knows or has reason to know that compensation is expected."); *Textron, Inc. v. Teleoperator Sys. Corp.,* 554 F. Supp. 315, 324 (E.D.N.Y. 1983) ("It is hornbook law that a party can manifest its assent to an offer by silence, or as in this case, silence coupled with performance consistent with the offer."); *Tanenbaum Textile Co. v. Schlanger,* 40 N.E.2d 225, 227, 287 N.Y. 400, 404 (1942) ("When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence.") (citation omitted); *In re Aetna Cas. & Sur. Co. v. Crown,* 181 A.D.2d 883, 884, 581 N.Y.S.2d 418, 419 (2d Dep't 1992) ("When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence."); *Russell v. Raynes Assocs. Ltd. P'ship,* 166 A.D.2d 6, 15, 569 N.Y.S.2d 409, 414 (1st Dep't 1991) (Duty to speak "may be created by a course of conduct . . . which gives the offeror reason to understand that silence will constitute acceptance.") (citations omitted).

[32]    *See Allen v. National Video, Inc.*, 610 F. Supp. 612, 631 (S.D.N.Y. 1985) ("A written contract need not be signed to be binding upon a party, so long as the party indicates through performance of its terms or other unequivocal acts that it intends to adopt the contract."); *QVC Network, Inc. v. Christina Sportswear, Ltd.*, 93 Civ. 6840, 1995 WL 437701, at *4 (S.D.N.Y. July 24, 1995) (fact that parties consistently acted as if a contract had been created supported the finding that binding contract existed); *Gold Star Flooring Specialist, Inc. v. Manshul Constr. Corp.*, 93 Civ. 4213, 1995 WL 231366, at *5 (S.D.N.Y. Apr. 19, 1995) (Contract binding "so long as the party indicates through performance of its terms or other unequivocal acts that it intends to adopt the contract.").

J.) (precluding evidence on ground that parties had agreed such evidence was inadmissible).

Here, FZWZ made its best efforts to do its own analysis from source documents of payments

received from insurers and to provide that to the Aviation Defendants as a courtesy and an aid on

the express condition that it could not be used as evidence or as an admission.

In addition to the bar of the express restrictions and conditions on which the

FZWZ Payment Analysis was provided to the Aviation Defendants, the doctrine of estoppel also

prohibits the Aviation Defendants from using the FZWZ Payment Analysis as evidence. *See*

*General Elec. Capital Corp. v. Eva Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994) (noting that

"silence in the face of an explicit contrary assumption by an innocent party may constitute a

concealment of facts or a false misrepresentation for estoppel purposes"; holding borrower was

equitably estopped from challenging lender's interpretation of agreement); *Payroll Express Corp.*

*v. Aetna Cas. & Sur. Co.*, 659 F.2d 285, 290 (2d Cir. 1981) (defendant's awareness that plaintiff

understood letters to be binding estops defendant, in absence of some contemporaneous contrary

statement by it, from claiming that letters were not part of contract, once plaintiff relied on

letters); *Presidential Life Ins. Co. v. Milken*, 946 F. Supp. 267, 278-79 (S.D.N.Y. 1996) (noting

that party who did not object to settlement was estopped from challenging that settlement if

settling party relied on lack of objection); *Electrolux Corp. v. Val-Worth, Inc.*, 161 N.E.2d at

201, 6 N.Y.2d at 564, 190 N.Y.S.2d at 983 ("[P]laintiff was estopped from enjoining a course of

business of which it not only presumably had knowledge, but in which it actively

participated.").[33]

Accordingly, the FZWZ Payment Analysis is inadmissible as evidence and should

be stricken from the record of the Aviation Defendants' summary judgment motion.

---

[33]    The Aviation Defendants cannot demonstrate substantial hardship by not being able to use the
FZWZ Payment Analysis, because all of the supporting, underlying documents from which FZWZ was
working have been provided to the Aviation Defendants. *See In re Natural Gas Commodity Litig.*, 03
Civ. 6186, 2005 WL 1457666, at *8 (S.D.N.Y. June 21, 2005) ("Since the data used in defendants'
analyses has been provided to plaintiffs, plaintiffs suffer no hardship by not having defendants'
analyses.").

**IV.**

## THE GOKHALE DECLARATION IS INADMISSIBLE BECAUSE THERE IS NO FOUNDATION FOR ITS FACTUAL ASSERTIONS WHICH ARE THE PREDICATE TO ALL ITS CALCULATIONS

The Gokhale Declaration should be stricken because there is no factual basis presented for its calculations. All of the Gokhale Declaration's calculations are based on the precise dates each insurance payment was received by WTCP, but there is no evidence in the record of such information. The Gokhale Declaration appears to claim that the purported source of this information is the FZWZ Payment Analysis, but that inadmissible document does not reflect the date that any insurance payment was received by WTCP. *See* Barry Decl. Exh. T.

Since there has been no demonstration of where the Gokhale Declaration got the information as to dates that it used for all of its calculations, the Gokhale Declaration is inadmissible as evidence. *See Pennsylvania Dental Ass'n v. Medical Serv. Ass'n of Pa.*, 745 F.2d 248, 262 (3d Cir. 1984) ("factual predicate of an expert's opinion must find some support in the record"); *Slaughter v. Southern Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990) (noting that expert's summary judgment affidavits must contain factual support for opinions expressed therein); *see also Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998) ("For the purposes of summary judgment under Fed. R. Civ. P. 56(e), an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion."); *O'Neill v. JC Penney Life Ins. Co.*, CV-97-7467, 1998 WL 661513, *6 (E.D.N.Y. Aug. 6, 1998) ("Without a statement of the facts on which he relied, his [expert's] affidavit is insufficient pursuant to Fed.R.Civ.P. 56(e).").

Moreover, even if the FZWZ Payment Analysis had in fact supplied the information that it does not contain, the Gokhale Declaration cannot use the FZWZ Payment Analysis[34] because, as shown above in Point III, the use of the FZWZ Payment Analysis as

---

[34]    If, as we speculated in note 27 above, the Gokhale Declaration relied not on the FZWZ Payment Analysis -- which the Barry Declaration mistakenly identifies as being prepared by Wachtell Lipton -- but rather on another FZWZ-prepared chart, the Gokhale Declaration would still be inadmissible as evidence because, like the FZWZ Payment Analysis, all of the other FZWZ-prepared analyses and charts were also provided to the Aviation Defendants as a courtesy and aid and subject to the express condition that they were not an admission and could not be used as evidence.

evidence is barred both by the fact that it was provided to the Aviation Defendants on the express condition that it could not be used as evidence or as an admission and by the doctrine of estoppel.

Accordingly, the Gokhale Declaration is inadmissible as evidence, should not be considered, and should be stricken from the record of the Aviation Defendants' summary judgment motion.

## **CONCLUSION**

A party cannot rely upon inadmissible evidence to support its motion for summary judgment. The Aviation Defendants have ignored this clear rule, as their summary judgment motion is chock full of inadmissible materials as purported evidence. For all of the foregoing reasons, the Court should rule that Exhibits A-1, A-2, A-3, B, B-1, B-2, B-3, C, E, F, G, Q, R, T, U & X to the Barry Declaration, and the Gokhale Declaration itself, are all inadmissible as evidence and are stricken from the record of the Aviation Defendants' motion for summary judgment.

Dated: August 18, 2008
     New York, New York

                  FLEMMING ZULACK WILLIAMSON
                    ZAUDERER LLP

                  By:

                    Richard A. Williamson, Esq.
                  One Liberty Plaza
                  New York, New York 10006
                  (212) 412-9500
                  rwilliamson@fzwz.com

                  Attorneys for Plaintiffs
                  World Trade Center Properties LLC,
                  1 World Trade Center LLC,
                  2 World Trade Center LLC,
                  3 World Trade Center LLC, and
                  4 World Trade Center LLC